## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**TALEEA G.,**

    **Plaintiff,**

      **v.**

**ANDREW SAUL,** *Commissioner,*
*Social Security Administration,*

    **Defendant.**

**CIVIL ACTION FILE**

**No. 1:19-cv-03786-AJB**

### ORDER AND OPINION[1]

Plaintiff Taleea G. brought this action pursuant to §§ 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.[2]   For the reasons set forth below, the Court

---

[1]   The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (*See* Dkt. Entry dated Sept. 23, 2019).  Therefore, this Order constitutes a final Order of the Court.

[2]   Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq.,

**REVERSES** the final decision of the Commissioner **AND REMANDS** the case to the Commissioner for further proceedings consistent with this opinion.

## I.   PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on June 2 and 23, 2016, respectively, alleging disability commencing on May 23, 2016.   [Record (hereinafter "R") 265-72].   Plaintiff's applications were denied initially and on reconsideration.   [R151-58].   Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").   [R170-73].   An evidentiary hearing was held on October 31, 2018.   [R34-58].   The ALJ issued a decision on February 22, 2019, denying Plaintiff's application on the ground that she had not been under a

---

provides for SSI for the disabled.  Title II of the Social Security Act provides for federal DIB.   42 U.S.C. § 401, et seq.   Title XVI claims are not tied to the attainment of a particular period of insurance eligibility.   *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).   The relevant law and regulations governing the determination of disability under a DIB claim are identical to those governing the determination under an SSI claim.  *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985).  Title 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.   In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "Period of Disability," or to recover SSI. However, different statutes and regulations apply to each type of claim.   Many times, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

"disability" at any time through the date of the decision. [R9-31]. Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on June 26, 2019, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff then filed an action in this Court on August 22, 2019, seeking review of the Commissioner's decision. [Doc. 1]. The answer and transcript were filed on January 2, 2020. [Docs. 6-7]. On March 3, 2020, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 12], on April 2, 2020, the Commissioner filed a response in support of the decision, [Doc. 14], and on April 15, 2020, Plaintiff filed a reply brief, [Doc. 16]. The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).[3]

## II.   PLAINTIFF'S CONTENTIONS

As set forth in Plaintiff's brief, the general issue to be decided is whether the Commissioner's decision was supported by substantial evidence and the specific issues are (1) whether the ALJ evaluated all the medical opinions and stated the

---

[3]      Neither party sought oral argument.  (*See* Dkt.).

weight given to each opinion, including specifically the weight given to two examining doctors, (2) whether the ALJ omitted important limitations from the hypothetical question asked to the vocational witness and therefore did not satisfy his step-five burden, and (3) whether the ALJ did not explain his findings that Plaintiff could perform medium work leaving the RFC unsupported by substantial evidence. [Doc. 12 at 7].

## III.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11ᵗʰ Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11ᵗʰ Cir. 1999), *superseded by* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000),[4] *on other grounds as stated in Washington v.*

---

[4]     Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the administrative process. *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330, 338-39 (S.D.N.Y. 2001); *Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 n.6 (N.D. Ga. 2006) (Story, J.) (citing 20 C.F.R. § 402.35(b)(1)). Although SSRs do not have the force of law, they are entitled to deference so long as they are consistent with the Social Security Act and regulations. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9ᵗʰ Cir. 2007); *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 832 (6ᵗʰ Cir. 2000) ("If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR."); *Minnesota v. Apfel*, 151 F.3d 742, 748 (8ᵗʰ Cir. 1998) ("Social Security Rulings, although entitled to deference, are not binding or conclusive."); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4ᵗʰ Cir. 1995); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1051 (10ᵗʰ Cir. 1993).

*Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360-61 (11ᵗʰ Cir. 2018). The claimant must prove at step one that he is not undertaking substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to

perform.  *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant

must prove an inability to perform the jobs that the Commissioner lists.  *Id.*

If at any step in the sequence a claimant can be found disabled or not

disabled, the sequential evaluation ceases and further inquiry ends.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step

five, the overall burden rests on the claimant to prove that he is unable to engage in

any substantial gainful activity that exists in the national economy.  *Doughty*, 245

F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983),

*superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in*

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## IV.   SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security

benefits by the Commissioner.  Judicial review of the administrative decision

addresses three questions:  (1) whether the proper legal standards were applied;

(2) whether there was substantial evidence to support the findings of fact; and

(3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*,

558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478,

488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the

evidence, or substitute its judgment for that of the Commissioner.  *Dyer*

7

*v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's

Case 1:19-cv-03786-AJB   Document 27   Filed 03/19/21   Page 9 of 48


decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## V.   STATEMENT OF FACTS[5]

### A.  Background

Plaintiff was a younger person on the alleged onset date, who went to school to eleventh grade, but did not graduate, and had past relevant work as a self-employed hair stylist.  [R23, 41].  Plaintiff alleges disability due to degenerative disc disease, obesity, generalized anxiety disorder, a tracheostomy and keloid scar that repeatedly abscesses, post-traumatic stress disorder ("PTSD"), depression, irritability, and impatience, and a fractured pelvis that causes back and hip pain and arthritis.  [R14-15; Doc. 12 at 8-9].

### B.  Lay Testimony

Plaintiff was unrepresented at the hearing before the ALJ.  [R36].  The ALJ

---

[5]      In general, the records referenced in this section are limited to those deemed by the parties to be relevant to this appeal.  [*See* Docs. 12, 14, 16; *see also* Doc. 8 (Sched. Ord.) at 3 ("The issues before the Court are limited to the issues properly raised in the briefs.")].  Where a party's numbering conflicts with the page numbers assigned by the Court's electronic filing system, the Court's citations will utilize the page numbering assigned by the Court's electronic filing system.

explained Plaintiff's right to proceed unrepresented or to attempt to secure representation, whether free or paid. [R36-38]. Plaintiff stated that she understood and wanted to proceed with the hearing and completed a form to that effect. [R39]. Plaintiff indicated she understood where her case stood administratively. [R39-40].

Plaintiff testified that she was 49 years old, quit school in twelfth grade, and had previously been self-employed cutting hair. [R40-41]. Plaintiff chose that job because there was no judgment and she could work at her own pace. [*Id.* at 41]. Plaintiff stated that her main problem was that she was hit by a truck, got a significant scar, had a tracheotomy performed, and that it caused her bad headaches and pain. [R42]. Plaintiff testified that she could not sit or stand, her fingers started to cramp and shake, and she had not cut hair in about a year. [*Id.*]. She stated that she had no medical insurance and her Medicaid had ended. [R42-43]. Plaintiff reported that she went to the emergency room in October because of the cyst on her neck and that she had had ten surgeries on her neck but the scar tissue kept coming back. [R43]. Plaintiff stated that scar was also on her esophagus. [R44].

Plaintiff testified that, after getting hit by the truck, she broke her hip, ruptured her pelvis, broke her left leg, and was told she would later need a hip replacement. [*Id.*]. Plaintiff stated that she could not put too much pressure on her

hips or stand up. [*Id.*]. She stated that her children had to do her shopping and she had anxiety attacks. [*Id.*]. She estimated that she could stand for about 5 minutes before needing to sit down and could sit for 15-20 minutes before it started to hurt. [R45]. She testified that she could only walk for about 20 yards. [*Id.*].

Plaintiff stated that she had an x-ray that revealed problems with her vertebrae but she had not had one in a long time because of her lack of health insurance. [R45-46]. Plaintiff stated that she had previously been taking Percocet and Naproxen but they had not controlled her pain. [R46]. Plaintiff testified that, with her pain medication, her pain was 7/10. [*Id.*]. She stated that, on her last visit to the emergency room, the doctor told her that her blood pressure was very high. [R47]. Plaintiff further stated that within the last eight months she had fallen down the stairs and hurt her knee. [*Id.*]. Plaintiff also stated that she had swelling in her left ankle. [R48].

Plaintiff testified that she also suffered from anxiety and depression and self-isolated. [*Id.*]. She had received a number of different medications, but she did not know if they were helping her and they kept her from sleeping. [R49]. Plaintiff stated that she did not want to kill herself, but she thought it would be better if she was not here. [*Id.*].

She could still do dishes and was most comfortable reclining in a bed. [*Id.*].

She stated that she laid in her bed for eight to nine hours a day.  [R50].

Plaintiff's son, Don Wood, testified that he saw Plaintiff every day, his mother could not walk or stand, and she needed help with everything.  [R51]. Wood stated that Plaintiff used a wheelchair in the grocery store and complained about pain in her neck, hips, and legs.  [*Id.*].  He testified that she stayed in her room and could be nice one minute and mad the next.  [R51-52].

## C.   Medical Records

On January 23, 2016, Plaintiff completed a function report indicating that she lived with her children, slept only two to four hours a night, and slept all day. [R394].  Plaintiff also stated that she cried all day.  [R395].  Plaintiff indicated that she needed reminders to take care of personal needs, her children cooked her meals, and she needed encouragement to do things.  [R396].  She related that she had not driven in three months, but that she could count change, handle a savings account, use a checkbook, and watched television and did crossword puzzles every day. [R397-98].  Plaintiff indicated that she had no friends but did not want to be alone and argued with her kids.  [R398-99].  She complained that she could not sit or walk for long periods, maybe five to seven minutes, and did not want to be around people.  [R398].  Plaintiff indicated that she did not like being told what to do, did not like a lot of people, and did not like changes to her routine.  [R400].  She

further stated that she thought the police were bad.  [*Id.*].

On December 20, 2016, Plaintiff was seen by Dr. Dianne Bennett-Johnson, M.D., for a Social Security Disability Examination.  [R549].  Dr. Bennett-Johnson noted Plaintiff's chief complaints to be a hip injury, high blood pressure, and back and ankle issues.  [*Id.*].  She noted that Plaintiff claimed to have been hit by a truck in 1996, to have suffered a major injury resulting in residual lower back pain radiating to the hips and stiffness in her lower back, and to be unable to walk for more than 15 minutes at a time.  [*Id.*].  Dr. Bennett-Johnson noted that her major issue now related to her tracheostomy scar, which caused her to go to the emergency room every three months and which she used a safety pin to leak.  [*Id.*].

Dr. Bennett-Johnson noted that Plaintiff lived with her children, did hair occasionally, talked to herself out of frustration, denied suicidal ideation but had a low mood, slept poorly, and had a long-term obesity issue.  [R550].  A review of systems indicated that Plaintiff was well-developed, obese, but in no acute physical distress.  [*Id.*].  She noted scarring at the tracheal area but no discharge, regular heart rate and rhythm, a lumbar flexion of 75 degrees without the ability to hyperextend, alertness and full orientation, and a normal gait.  [R550-51].

Dr. Bennett-Johnson diagnosed Plaintiff with hypertrophic scar/keloid with fistula at trachea, depressed mood, lower back pain, and hypertension.  [R551].

13

She noted no current radiculopathy but noted stiffness and stated that Plaintiff's major issue had been annoyance and discomfort from her poorly healed tracheostomy repair. [*Id.*]. She noted that Plaintiff reported having depression and chronic issues with her lower back. [*Id.*].

Dr. Bennett-Johnson ordered an x-ray of Plaintiff's hip and pelvis with a right view on the same day. [R542]. The x-ray found a bony eburnation along the acetabula without articular narrowing and deformities suggesting old healed injuries along the lateral left pubic bone. [*Id.*]. The impression was of stable evidence for old, healed lower pubic fractures and a bony eburnation along the acetabula without significant change and without arthritic narrowing of the hip joints. [*Id.*]. Dr. Bennett-Johnson also ordered an x-ray of Plaintiff's lumbar spine, which found normal vertebral alignment, fairly degenerative anterior syndesmophyte formation, intact disc spaces, and no obvious fractures. [R543].

On February 10, 2017, Valerie Besses, Psy.D., performed a Consultative Psychological Evaluation on Plaintiff. [R554]. Plaintiff alleged that she could not work because she was hit by a truck in 1996. [*Id.*]. Dr. Besses noted that Plaintiff arrived on time for her evaluation with her daughter, was dressed casually, demonstrated no motor abnormalities, had a notably large keloid scar on her neck, and was pleasant and cooperative through the exam. [*Id.*]. She found that

14

Plaintiff's thought process was logical and goal-oriented, she was attentive to interview questions and was able to concentrate sufficiently to complete a three-stage command, no psychotic processes were observed, suicidal or homicidal ideation were convincingly denied, her speech was normal, and her intellectual capacity was estimated to be in the low average range. [R554-55].

Dr. Besses noted that Plaintiff told her she had quit all of her jobs within one year due to physical pain. [R555]. Plaintiff also told Dr. Besses that she did not get along with coworkers and supervisors and that supervisors found her to be argumentative. [*Id.*]. Dr. Besses noted that Plaintiff had ten surgeries to repair severe nerve damage and keloid scarring from a tracheostomy. [*Id.*]. Plaintiff stated that Plaintiff self-medicated due to her pain symptoms and that the pain from her tracheostomy scar sometimes caused her to go into a "rage." [*Id.*]. Plaintiff also reported that she was easily overwhelmed by loud noises and large groups and preferred to stay to herself. [*Id.*]. Dr. Besses noted that Plaintiff was not under psychological care, had no history of outpatient treatment, had not been hospitalized for psychological problems, and was not taking any prescription medications. [R556]. Plaintiff reported that she witnessed her uncle sexually assault her siblings and rape her brother in front of her. [*Id.*].

Plaintiff reported that, on a typical day, she woke up at 6 a.m., watched

15

television, stayed in bed for most of the day, required reminders to complete her daily routine, performed limited housekeeping, completed tasks at a reduced pace due to pain, and had difficulty lifting or standing for extended periods.  [*Id.*]. Plaintiff reported that she only kept in contact with her older brother, had a close relationship with her children, but had no friends.  [*Id.*].  Dr. Besses considered Plaintiff to be valid historian of her daily activities and physical and psychological conditions.  [R557].

In conclusion, Dr. Besses found that Plaintiff was experiencing persistent depressive disorder and her prognosis was poor because she refused psychotherapeutic treatment and medication for depressive symptoms and anxiety. [*Id.*].  She found that Plaintiff was able to understand, remember, and carry out simple, detailed, and complex instructions but her concentration was moderately impaired for daily tasks and basic work-related functions due to her depressive symptoms.  [*Id.*].  Dr. Besses found that Plaintiff's ability to interact appropriately with co-workers, supervisors, and the public may be moderately and sporadically limited because of her social isolation, intermittent anger, and irritability.  [*Id.*]. She further found that Plaintiff was moderately limited in her ability to adhere to a typical work schedule due to her difficulty maintaining adequate functioning on many days and noted that Plaintiff did not appear to handle stressful feelings

16

adaptively and would have moderate difficulty adapting to stressors in a typical work environment.  [*Id.*].

On June 27, 2017, Plaintiff was seen at Gwinnett Psychiatry.  [R839].   The notes indicate that Plaintiff was friendly and attentive, but glum.  [*Id.*].  Plaintiff was found to have intact short- and long-term memory, to be fully oriented, to have no signs of attentional difficulties, and to be cooperative and attentive throughout the session.  [*Id.*].  Similar findings were made at Gwinnett Psychiatry a month later.  [R846].

On September 22, 2017, Plaintiff was seen for an initial examination by Lyle Brown, PA-C, and Craig Mines.  [R560-61].  Plaintiff complained of hip pain and stated that she was struck by a vehicle 20 years ago and had bilateral pelvic and hip fractures.  [R560].  Plaintiff stated that her pain had gotten severe in the past few months and that any activity or movement caused severe and debilitating pain in her hips.   [*Id.*].   The notes indicate that over-the-counter medications were ineffective and Plaintiff was not taking any prescription medication.  [*Id.*].

A review of systems indicated that Plaintiff was appropriate appearing and not in acute distress, had normal respiratory effort, and an inspection of her hips revealed no obvious deformity but significant pain was caused by a rotation of her bilateral hips.  [*Id.*].  A loss of motion was noted as well as significant tenderness

to deep palpitation.  [*Id.*].  The notes indicate Plaintiff appeared to be suffering from severe osteoarthritic change within her bilateral hips and would likely need to undergo hip arthroplasty to reduce her symptoms and improve her function but first suggested that conservative measures be tried.  [R561].  Plaintiff was ordered to return in a few weeks for a repeat evaluation.  [*Id.*].

Plaintiff was seen at Salveo Integrative Health on October 16 and November 6, 16, 29, 2017.  [R568, 570, 572, 575].  Plaintiff was repeatedly noted as having an appropriate attention span and not being easily distracted, as being pleasant and cooperative, and as having a linear thought process.  [*Id.*].

### D.  Vocational-Expert Testimony

The vocational expert ("VE") described Plaintiff as having an eleventh-grade education, past work as a hair stylist, and as having no transferable skills. [R53].  The VE testified that a hypothetical individual of the same age, education, and work experience, limited to a medium exertional level, who could not climb ladders, ropes, scaffolds, ramps, or stairs, and who could balance, stoop, kneel, crouch, and crawl frequently, who needed to avoid concentrated exposure to unprotected heights, who could understand, remember, and carry out simple to detailed tasks that were routine and repetitive and had no more than occasional contact with coworkers and the public, could work as a hairstylist.  [R53-54].  The

VE testified that such a hypothetical individual could also perform other work that existed in the national economy in significant numbers, such as a packer of agricultural produce, a laundry worker, and a linen-room attendant. [R54].

Next, the VE testified that a hypothetical individual at the light exertional level with the same non-exertional limitations, but with all postural limitations being occasional, could still work as a collator operator, paper pattern folder, or a routing clerk. [R54-55]. Third, the VE testified that a hypothetical individual who had the same non-exertional limitations as the second example but with sedentary exertional limitations could still find work as an addresser, cutter and paster of press clippings, or document preparer. [R55]. Finally, the VE testified that, if the hypothetical individual needed to lie down for six to seven hours a day due to pain, no past work or any work in the national economy would be available. [*Id.*]. Similarly, if the hypothetical individual could not carry out simple tasks on a regular and continuing basis due to depression and anxiety, no jobs would be available. [*Id.*].

## VI.   **ALJ'S FINDINGS**

The ALJ made the following findings of fact and conclusions of law, in relevant part:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2022 . . .

2.    The claimant engaged in substantial gainful activity during the
      following periods:  2016 . . . .

      . . .

3.    However, there has been a continuous 120-month period(s) during
      which the claimant did not engage in substantial gainful activity.  The
      remaining findings address the period(s) the claimant did not engage
      in substantial gainful activity.

4.    The claimant has the following severe impairments: degenerative disc
      disease, osteoarthritis, obesity, major depressive disorder, generalized
      anxiety disorder, and post-traumatic stress disorder . . . .

      . . .

5.    The claimant does not have an impairment or combination of
      impairments that meets or medically equals the severity of one of the
      listed impairments . . . .

      . . .

6.    After careful consideration of the entire record, the undersigned finds
      that the claimant has the residual functional capacity to perform
      medium work . . . with some exceptions.  The claimant can never
      climb ropes, ladders, or scaffolds.  She is limited to frequent climbing
      ramps/stairs, balancing, stooping, kneeling, crouching, and crawling.
      She must avoid concentrated exposure to unprotected heights.  The
      claimant can understand, remember, and carry out simple, routine,
      repetitive tasks with occasional interaction with the public and co-
      workers.

      . . .

7.    The claimant is unable to perform any past relevant work . . . .

      . . .

11.    Considering the claimant's age, education, work experience, and
        residual functional capacity, there are jobs that exist in significant
        numbers in the national economy that the claimant can perform . . . .

        . . .

12.    The claimant has not been under a disability . . . from May 23, 2016,
        through the date of this decision . . . .

[R14-25].

The ALJ explained that Plaintiff's earnings records showed that she had

acquired sufficient quarters of coverage to remain insured through December 31,

2022 and thus needed to establish disability on or before that date in order to be

entitled to a period of disability and disability insurance benefits.  [R12].  The ALJ

noted that Plaintiff earned $12,794 in 2017 and, although that did not rise to the

level of substantial gainful activity, it was close and indicated an ability to engage

in some work activity.   [R14].   The ALJ found that, in addition to her severe

impairments, Plaintiff suffered from hypertension and chronic cellulitis but they

were either episodic or controlled by medication and so did not impose more than a

minimal limitation on Plaintiff's ability to perform basic work activities.  [R15].

The ALJ found that Plaintiff did suffer from severe impairments, but they

did not meet the criteria of any listed impairments.  [*Id.*].  He further found that the

severity of the mental impairments, singly or in combination, did not meet or

medically equal the criteria of listing 12.04 or 12.06.  [*Id.*].  The ALJ found that

21

Plaintiff had a mild limitation in understanding, remembering, or applying information because she reported that she did not cook but did take care of her personal needs, made her bed, cleaned her bathroom, wrote checks, paid bills, drove occasionally, and enjoyed doing hair and nails in her free time. [*Id.*]. The ALJ found that Plaintiff had a moderate limitation in interacting with others because she reported having no friends and avoiding her siblings but spent time with her oldest brother. [R16]. The ALJ also noted that Plaintiff preferred self-isolating but lived in a house with adult children, went shopping in stores, and did hair and nails. [*Id.*].

The ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace because she needed reminders to bathe and take her medications, but asserted she could remain focused and attentive when carrying out her daily routine, could write checks, and pay bills, drove, and did crossword puzzles. [*Id.*]. The ALJ determined that Plaintiff had a mild limitation in adapting or managing herself based on her daughter's statement that she had no motivation, cried easily, and did not sleep regularly, but also lived with her adult children, took care of her personal needs, and because her behavior was appropriate at medical exams. [*Id.*]. Based on these findings, the ALJ therefore determined that neither the "paragraph B" nor "paragraph C" criteria were satisfied. [R16-17].

In determining Plaintiff's RFC, the ALJ considered all symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence as well as the opinion evidence. [R17]. The ALJ concluded that, while Plaintiff had some limitations, the medical evidence did not support a finding that she was precluded from all work. [*Id.*]. The ALJ noted that Plaintiff told the consultative examiner in December 2016 that she was hit by a truck in 1996 and alleged a hip injury, high blood pressure, and back and ankle problems, but noted that x-rays of her left ankle showed no acute injury and x-rays of her pelvis and right hip revealed healed lower pubic fractures and no arthritic narrowing of the hip joints. [R17-18]. The ALJ noted the consultative examiner's finding that although Plaintiff related having persistent lower back pain there was no current radiculopathy. [R18]. The consultative examiner found that the major issue was annoyance and discomfort form a poorly healed tracheostomy which caused weeping and recurrent abscesses in the area of the scar. [*Id.*]. The ALJ further noted that Plaintiff's scar with keloid formation worsened after a repair attempt, but noted that her upper extremities were generally fine for activities of daily living. [*Id.*].

With regard to Plaintiff's mental impairment, the ALJ noted that Plaintiff underwent a consultative psychological examination in February 2017 but was not

23

currently under the care of a psychiatrist, had no history of outpatient treatment, had never been hospitalized for psychological problems, and was not currently taking any prescription medications. [R18].   The ALJ noted that the consultative psychological examiner determined that plaintiff's prognosis was poor because she refused psychotherapeutic treatment and medication.  [*Id.*].   The ALJ summarized the consultative psychologist examiner's opinion that, among other things, Plaintiff was capable of carrying out simple, detailed, and complex instructions given her estimated intellectual disability, her concentration was moderately impaired for daily tasks and basic work-related functions, and her ability to interact appropriately with co-workers, supervisors, and the public might be moderately and sporadically limited.  [*Id.* at 18-19].

The ALJ noted that Plaintiff presented to Gwinnett Psychiatry in June 2017 complaining of severe anxiety and childhood sexual abuse that occurred between the ages of 9 and 12.  [*Id.* at 19].  The ALJ noted that Plaintiff was not taking any psychotropic medications at the time.  [*Id.*].  The ALJ noted that, at a follow-up visit, Plaintiff reported hearing mumbling voices and having angry outbursts, confusion, and sleep problems.  [*Id.*].  The ALJ observed that the examiner concluded that Plaintiff's behavior indicated that hallucinations were being experienced and she was assessed as having PTSD, generalized anxiety disorder,

major depressive disorder, and mood disorder, but there was no evidence of any further psychiatric treatment. [*Id.* at 19-20].

The ALJ noted that in August 2017 Plaintiff presented at an Emergency Room with complaints of "abscess over scar" but on re-evaluation felt better, her vital signs were stable, and she was found to be appropriate for discharge. [*Id.* at 20]. The ALJ noted that Plaintiff presented in September 2017 with hip pain but was not taking any medications at the time and an examination of her bilateral hips revealed no obvious deformities. [*Id.*]. However, she had significant pain elicited with internal and external rotation of bilateral hips and her provider indicated she would likely need to eventually undergo hip arthroplasty. [*Id.*].

The ALJ noted that in October 2017, Plaintiff's treatment records indicated that she presented as having lots of panic attacks and stated that her medication was not helping. [*Id.* at 21]. The notes also indicated that Plaintiff was not taking Gabapentin anymore because she believed it was for seizures and shingles. [*Id.*]. The ALJ determined that Plaintiff's obesity, single or in combination with other alleged impairments, did not contribute to a finding of disability. [*Id.*].

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some symptoms but Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not

entirely consistent with the record evidence. [*Id.*]. Despite the fact that Plaintiff and her son testified that she spent almost all day lying down, an x-ray of her left ankle was within normal limits and an x-ray of her spine showed only early degenerative joint disease. [*Id.*]. The ALJ also found that this alleged level of functioning was inconsistent with Plaintiff's substantial gainful activity level. [R21-22]. The ALJ further observed that Plaintiff remained able to take care of her personal needs, write checks, pay bills, drive once or twice a week, have a close relationship with her children, work on crossword puzzles, and do hair and nails. [*Id.* at 22]. The ALJ also noted that Plaintiff was non-compliant with her medications and recommendations to obtain mental health counseling, never had surgery for her physical impairments, and was never hospitalized for her psychological problems. [*Id.*].

The ALJ found that Plaintiff had a large keloid scar over her tracheostomy site that became unsightly but was not limiting. [*Id.*]. The ALJ noted that Plaintiff had not consistently sought treatment for her hip and back, which indicated intermittent pain, and her work as a hair stylist involved considerable standing. [*Id.*]. The ALJ noted that Plaintiff's mental health records reflected significant mental health problems but that they were not consistent with the treatment notes from medical visits from the same period that showed a normal mental status. [*Id.*].

The ALJ found that the treatment records were also not consistent with Plaintiff's work as a hairstylist.  [*Id.*].  The ALJ further found that no treating or examining physician supported total disability.  [R22-23].

The ALJ concluded, with regard to the record evidence, that the State Agency consultants' opinions of non-severe impairments should receive little weight because the opinions did not appear to have considered all Plaintiff's impairments based on the medical record.  [*Id.* at 23].

The ALJ further found that Plaintiff was 46-years-old, defined as a younger individual, had an eleventh grade education, that transferability of skills was not material, and that, given her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. [*Id.* at 23-24].  The ALJ noted the VE's testimony that, given all these factors, Plaintiff had the ability to perform the requirements of representative occupations such as packer/produce, laundry worker, and linen room attendant.  [*Id.* at 24]. The ALJ therefore found that Plaintiff had not been under a disability from May 23, 2016 through the date of the decision.  [*Id.* at 25].

## VII.   CLAIMS OF ERROR

Plaintiff argues that the ALJ did not explain the weight, if any, he gave to the opinions of two doctors who examined Plaintiff at the request of the

Commissioner and so implicitly rejected them. [Doc. 12 at 15]. Plaintiff argues that the doctors opined regarding her symptoms, diagnoses, and what she could do despite her limitations. [*Id.* at 16]. Plaintiff contends that the ALJ summarized the opinions of the two doctors, Dr. Bennett-Johnson and Dr. Besses, but that is all, which violates controlling regulations and caselaw as ALJs are required to consider all evidence and evaluate every medical opinion received. [*Id.* at 17]. Plaintiff argues this error warrants reversal. [*Id.* at 18].

Second, Plaintiff argues that the question posed by the ALJ to the VE did not include all of her limitations and so the VE's answer does not carry the ALJ's step-five burden. [*Id.*]. Plaintiff contends that the limitation to simple, routine, repetitive tasks does not adequately account for her moderate difficulties in concentration, persistence, or pace. [*Id.*]. Plaintiff notes that the ALJ found that her major depressive disorder, generalized anxiety disorder, and PTSD caused moderate limitations in her ability to maintain concentration, persistence, or pace but the hypothetical to the VE only limited the claimant to understanding, remembering and carrying out simple to detailed tasks that were routine and repetitive. [*Id.* at 19].

Plaintiff admits that certain caselaw holds that a restriction to simple or routine tasks adequately accounts for moderate limitations in concentration,

persistence, or pace when medical evidence demonstrates an ability to perform those tasks, but argues those holdings are inapplicable here because Dr. Besses' opinion indicated that her ability to concentrate and adhere to a work schedule was impaired.   [*Id.* at 20].   Plaintiff notes that Dr. Besses found Plaintiff's concentration was moderately limited for even basic work-related functions and that she would be moderately limited in her ability to adhere to a work schedule, which the ALJ did not account for.  [*Id.* at 20-21]  Plaintiff argues that, although she could carry out her daily routine, drive, and do crossword puzzles, people with mental disorders often adopt a highly restricted lifestyle where they appear to function well and that does not prove that she retained the ability to concentrate, persist, and maintain pace consistent with competitive employment standards. [*Id.* at 21].

Plaintiff further argues that the ALJ did not limit her ability to interact with supervisors despite her moderate difficulties in interacting with others.   [*Id.*].  Plaintiff contends that the ALJ found a moderate limitation in her interacting with others but the ALJ's hypothetical question included only a limitation to occasional contact with co-workers and the public and did not translate that limitation into her interactions with supervisors or explain why he did not do so.  [*Id.* at 22].   Plaintiff argues that the fact that she lives with adult children, has some contact with her

older brother, and enjoys doing hair and nails does not explain the ALJ's conclusion.  [*Id.* at 22-23].   Plaintiff argues that other courts have found that a limitation to occasional contact with the public did not adequately account for a claimant's moderate difficulties in social functioning when the difficulties were not implicitly accounted for and the ALJ did not cite relevant medical evidence. [*Id.* at 23 (citations omitted)].  Plaintiff contends the error was harmful.  [*Id.* at 23-24].

Third, Plaintiff argues that the ALJ did not explain his finding that she could perform medium work despite the fact that she fractured her pelvis and suffered lasting hip pain.  [*Id.* at 24-25].   Plaintiff notes that medium exertional work requires an individual to occasionally lift 50 pounds and frequently lift 25 pounds. [*Id.* at 25].  Plaintiff argues the ALJ's step-five burden cannot be met with a lack of evidence.  [*Id.* at 25-26].  Plaintiff contends that she was unrepresented so the ALJ had a duty to develop the record regarding her physical limitations.  [*Id.* at 27].

In response, the Commissioner argues that substantial evidence supports the ALJ's decision.  [Doc. 14 at 4].  The Commissioner argues that the ALJ properly evaluated the medical evidence in determining that Plaintiff was not disabled. [*Id.* at 5].  He submits that the ALJ summarized Dr. Bennett-Johnson's findings and argues that Plaintiff has failed to show how that evidence indicated she was

more limited than the ALJ found her to be in the RFC. [*Id.* at 9-10]. The Commissioner contends that that the RFC accounted for Plaintiff's physical condition by limiting her to medium work with additional restrictions and, although the ALJ did not state a specific weight he afforded to Dr. Bennett-Johnson's opinion, Plaintiff has failed to show greater limitations are supported by the exam. [*Id.* at 10]. The Commissioner argues that an ALJ not stating the weight given to a consultant's opinion is harmless error when the opinion was consistent with the ALJ's findings. [*Id.* at 10-11].

The Commissioner also argues that the ALJ considered and discussed Dr. Besses' evaluation of Plaintiff's mental impairments. [*Id.* at 11-12]. The Commissioner admits that the ALJ did not properly consider or weigh Dr. Besses' opinion, but again argues that the evidence demonstrated that she was more limited than the ALJ found her to be. [*Id.* at 12-13]. The Commissioner notes that the ALJ cited Dr. Besses' examination report in support of his finding of moderate limitations in the area of interacting with others and with concentration, persistence, and pace. [*Id.* at 13]. The Commissioner argues that these limitations are accounted for in the RFC by Plaintiff being limited to understanding, remembering, and carrying out simple, routine, repetitive tasks with only occasional interactions with the public and co-workers. [*Id.*]. Further, the Commissioner argues that

31

Dr. Besses' opinion indicated only that Plaintiff *might* have moderate and sporadic limitations in dealing with supervisors. [*Id.*]. The Commissioner contends that the ALJ's RFC determination regarding Plaintiff's mental ability was therefore supported by substantial evidence. [*Id.* at 13-14].

The Commissioner also argues that this case is distinguishable from the cases cited by Plaintiff, in which the ALJ referenced the treating physician only once and noted that the claimant saw the doctor monthly, because Dr. Bennett-Johnson and Dr. Besses were one-time consultative examiners and the ALJ here provided a detailed description of each doctor's evaluation and report finding. [*Id.* at 14-15].

Next, the Commissioner argues that the ALJ properly evaluated the medical evidence of record to determine Plaintiff's RFC. [*Id.* at 15]. He argues that the Eleventh Circuit has concluded that a limitation to simple, routine, and repetitive tasks sufficiently accounts for moderate difficulties in concentration, persistence, or pace. [*Id.* at 16-18 (citations omitted)]. The Commissioner further argues that, although Dr. Besses found that Plaintiff had moderate limitations in some areas, she opined that she was capable of understanding or remembering, and carrying out simple, detailed, and complex instructions. [*Id.* at 18].

The Commissioner contends that Plaintiff's argument that the RFC did not account for her limitations in working with supervisors is flawed because the ALJ noted her ability to live with her adult children and go shopping and Plaintiff indicated her ability to get along with others by doing occasional hair styling. [*Id.* at 18-19]. The Commissioner argues that the ALJ did not include a limitation related to interacting with supervisors because he did not feel such a limitation was supported, and unsupported limitations need not be included in the hypothetical to the VE. [*Id.* at 19-20].

The Commissioner argues that the ALJ set out substantial evidence in the record demonstrating that Plaintiff's conditions did not prevent her from performing a medium level of work and Plaintiff failed to meet her burden of proving that she was more limited than the ALJ found her to be. [*Id.* at 20]. The Commissioner argues that the ALJ, not doctors, craft a claimant's RFC and that RFC need not be underpinned by a medical source opinion. [*Id.* at 20-21]. The Commissioner argues that Plaintiff seeks to have this Court impermissibly reweigh the evidence and, even if some evidence exists to the contrary, this Court must still affirm the ALJ's decision. [*Id.* at 21].

With regard to Plaintiff's hip fracture, the Commissioner notes that the ALJ was aware of it, it occurred 20 years prior to her disability onset date, and an x-ray

from December 2016 revealed no significant change and no arthritic narrowing of the hip joints.  [*Id.* at 22].  The Commissioner further argues that the existence of an impairment does not reveal the extent to which that impairment would limit her ability to work.  [*Id.*].

In reply, Plaintiff argues that the ALJ's failure to weigh Dr. Bennett-Johnson's and Dr. Besses' opinions were not harmless because an ALJ is required to weigh medical opinions and state with particularity the weight given to them and why.  [Doc. 16 at 1].  Plaintiff contends that these errors were harmful because the opinions showed Plaintiff was more limited than the ALJ accounted for in the RFC.  [*Id.* at 2].  For example, Plaintiff points out that Dr. Bennett-Johnson found that Plaintiff had a reduced range of motion in her back and knees and she could not walk for more than 15 minutes at a time, and Dr. Besses found that Plaintiff's concentration was moderately impaired for daily tasks and basic work-related functions.  [*Id.* at 2-3].

Next, Plaintiff argues that a limitation to simple work does not account for her moderate deficit in concentrating, persisting, and maintaining pace because the ALJ did not weigh the medical opinion evidence, which distinguishes it from cases cited by the Commissioner.  [*Id.* at 3-4].  Plaintiff also argues that the ALJ did not credit any of the opinion evidence or rely on it to support the limitations imposed.

34

[*Id.* at 4-5].  Plaintiff argues that the case should be remanded so that the ALJ may include all the limitations in his hypothetical question to the VE.  [*Id.*].

Finally, Plaintiff contends that the ALJ did not explain how he concluded that she could perform medium work despite agreeing that she had degenerative disc disease and osteoarthritis, which distinguishes this case from others where claimant's pain or fatigue were never examined by a doctor or previously mentioned by the claimant.  [*Id.* at 6-7].  Plaintiff argues that the ALJ has failed to build a logical bridge from the evidence to the conclusion that she is able to perform medium level work on a full-time schedule.  [*Id.* at 7].

## VIII.  DISCUSSION

After careful consideration of the parties' arguments, the ALJ's decision, and the evidence of record, the undersigned finds that the ALJ's decision was based upon errors of law and not supported by substantial evidence, and therefore must be reversed and remanded.

Plaintiff first argues that the ALJ did not explain the weight given to Dr. Bennett-Johnson's and Dr. Besses' opinions.   [Doc. 12 at 15-16].   The Commissioner concedes that the ALJ did not specifically state the weight given to the opinions, but argues that he reviewed their findings in-depth, and that, in any event, Plaintiff failed to demonstrate limitations greater than those supported by

the examinations.  [Doc. 14 at 4-5, 9-15].

The Commissioner is required to "consider all evidence" in a case record in making a determination as to disability.  20 C.F.R. § 404.1520(a)(3).  More specifically, the Commissioner is required to evaluate every medical opinion the agency receives. 20 C.F.R. § 404.1527(c); *cf.* 20 C.F.R. § 404.1527(b) [6] ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive"); SSR 06-03p, 2006 WL 2329939, at *4 ("[T]he [Social Security] Act requires us to consider all of the available evidence in the individual's case record in every case"); *see also Lawton v. Comm'r, Soc. Sec.*, 431 Fed. Appx. 830, 834 (11th Cir. June 22, 2011) (stating an "ALJ must state with particularity the weight given to different medical opinions and the reasons therefor").  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Lawton*, 431 Fed. Appx. at 834.

The Eleventh Circuit applies harmless error analysis in Social Security cases.

---

[6]     While these Social Security Regulations have subsequently changed, the changes apply only to claims filed after March 27, 2017.  *Robert W. v. Comm'r, Soc. Sec.*, No. 1:18-cv-0998, 2019 WL 3934803, at *8 (N.D. Ga. Aug. 20, 2019); 20 C.F.R. § 404.1520c.  Plaintiff's claim was filed in 2016.  [R265-72].

*See, e.g., Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ's error to be harmless when ALJ incorrectly stated that plaintiff was closely approaching advanced age, but then applied the Grid that reflected the plaintiff's correct age); *Murray v. Heckler*, 737 F.2d 934, 936 (11th Cir. 1984) (finding ALJ's mechanistic application of age Grids to be harmless error).

Moreover, harmless error applies to an ALJ's failure to state the weight given to a medical opinion. *See, e.g., Sarria v. Comm'r, Soc. Sec.*, 579 Fed. Appx. 722, 724 (11th Cir. Aug. 28, 2014) (finding harmless error in an ALJ failing to state the weight given to two medical opinions because they were consistent with his findings about the claimant's mental RFC); *Colon v. Colvin*, 660 Fed. Appx. 867, 870 (11th Cir. Sept. 12, 2016) (finding that an ALJ's failure to mention two opinions and to state the weight given to a third opinion was harmless error because the opinions were consistent with the ALJ's conclusions regarding the claimant's mental limitations). Generally, an error is harmless in a Social Security case if it "do[es] not affect the ALJ's determination that a claimant is not entitled to benefits." *Young v. Astrue*, No. 8:09-cv-1056, 2010 WL 4340815, *4 (M.D. Fla. Sept. 29, 2010).

A review of the ALJ's opinion confirms that, although he reviewed Dr. Bennett-Johnson's and Dr. Besses' findings, he did not specifically state the

weigh he afforded them.  [*See* R17-19].  An ALJ is required to state the weight given to the medical opinions in the record.  *Lawton*, 431 Fed. Appx. at 834.  The ALJ therefore erred.  Accordingly, the Court examines whether or not that error was harmless.

First, Plaintiff argues that a failure to state with particularity the weight given to an opinion alone warrants remand.  [Doc. 16 at 1-2 (citing *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011))].  The Court disagrees.  The Eleventh Circuit's opinion in *Winschel* does not mention harmless error and the Court is disinclined to interpret the decision as overturning cases applying that standard in Social Security matters without the Eleventh Circuit having made an explicit statement to that effect.  This includes the cases cited above where the harmless error standard was specifically applied when an ALJ did not specifically state the weight given to a medical opinion.  Moreover, the Court finds that *Winschel* is not controlling because it is factually distinguishable.  In *Winschel*, the only mention that the ALJ made of the omitted opinion noted that the claimant saw the doctor, who was a treating physician, monthly.  *Winschel*, 631 F.3d at 1179.  In contrast, the opinions here were not from treating physicians and the ALJ reviewed the findings at length.  [R17-19].

Plaintiff's second argument is that the ALJ's failure to weigh the opinions was harmful because they indicated greater limitations than those included in the RFC. [Doc. 16 at 2]. In particular, Plaintiff points to Dr. Bennett-Johnson's findings that Plaintiff had early arthropathy, a reduced range of motion in her back and knees, and that her back pain and stiffness prevented her for walking for more than 15 minutes at a time, and argues this might have prevented her from performing medium work. [*Id.* at 2]. With regard to Dr. Besses, Plaintiff points to her findings that she was moderately impaired in her daily tasks and basic work-related functions and also in her ability to adhere to a typical work schedule, which might limit her ability to concentrate and adhere to a work schedule. [*Id.*].

The Court finds Plaintiff's argument with regard to Dr. Bennett-Johnson to be unconvincing. While it is true that Dr. Bennett-Johnson noted Plaintiff's hip injury and Plaintiff's assertion that she could only walk for 15 minutes at a time, she identified Plaintiff's major current issue as being her tracheostomy scar. [R549]. Dr. Bennett-Johnson diagnosed Plaintiff with hypertrophic scar/keloid with fistula at trachea and lower back pain but noted no current radiculopathy and again stated that Plaintiff's major issue was annoyance and discomfort with her poorly treated tracheostomy repair. [R551]. Given Dr. Bennett-Johnson's stated focus on Plaintiff's tracheostomy repair and scarring, the Court finds that the

ALJ's failure to weigh her opinion was harmless and would not have impacted the ALJ's finding regarding whether Plaintiff was entitled to benefits. *Sarria*, 579 Fed. Appx. at 724; *Young*, 2010 WL 4340815, *4.

The Court therefore turns to the ALJ's failure to weight Dr. Besses' opinion. In relevant part, Dr. Besses concluded that Plaintiff was able to understand, remember, and carry out simple, detailed, and complex instructions but her concentration was moderately impaired for daily tasks and basic work-related functions due to her depressive symptoms. [R557]. She also found that Plaintiff's ability to interact appropriately with co-workers, supervisors, and the public may be moderately and sporadically limited. [*Id.*]. She further found that Plaintiff was moderately limited in her ability to adhere to a typical work schedule due to her difficulty maintaining adequate functioning on many days. [*Id.*]. Plaintiff argues that these findings require greater limitations than those found in the RFC, which only limited her to simple, routine, repetitive tasks, and to occasional interaction with the public and co-workers. [Doc. 16 at 2-3; *see also* R16-17.].

The Court finds that, had the ALJ weighed Dr. Besses' opinion, he might have impacted the ALJ's findings as to benefits. In particular, the Court notes Dr. Besses' finding that Plaintiff's ability to interact appropriately with co-workers, supervisors, and the public might be moderately and sporadically limited, [R557],

40

while the RFC included only a limitation to occasional interaction with the public and co-workers no limitation was included as to supervisors, [R17].

Several factors indicate that if the ALJ had properly weighed Dr. Besses' opinion, he would have concluded that greater limitations than those imposed by the RFC were warranted.  First, there are several facts within Dr. Besses' opinion supporting such finding.  For example, Dr. Besses' noted that Plaintiff's daughter reported that Plaintiff suffered from oppositional defiant disorder.  [R556].  While Dr. Besses did not further mention that assertion, it is in line with her findings regarding Plaintiff's ability to interact with supervisors.  Plaintiff further reported to Dr. Besses that she did not get along with her supervisors when she was working and that they found her to be argumentative.  [R555].  Finally, Plaintiff informed Dr. Besses that the pain caused by her tracheostomy scar sometimes caused her to go into a "rage" because it was so uncomfortable.  [*Id.*].  Obviously, to the extent that Plaintiff was in such a condition, it would affect her ability to interact with others, including supervisors.  Although the ALJ did review Dr. Besses' findings in some depth, he did not examine these facts in that context of whether she might have a moderate difficulty interacting with supervisors.

Facts outside Dr. Besses' opinion also support a greater limitation with regard to supervisors than was included in the RFC.  The Court notes that when

41

Plaintiff was asked in her Function Report if she got along with authority figures, she indicated she did not get along with police and did not like people telling her what to do. [R400]. When asked if she had ever been fired because of problems getting along with people, she stated that she did not like people getting in her face and did not get along with a lot of people. [*Id.*]. Although the ALJ referred to the function report repeatedly, [*see, e.g.*, R15, 16, 22], he did not discuss these particular aspects of the report.

Finally, the Court notes that the ALJ considered Plaintiff's work as a hairstylist and found that her reportedly significant mental health symptoms were not consistent with her self-employment in that field. [R22]. However, during her hearing testimony, Plaintiff stated that she enjoyed this kind of work because there was no judgment and she could work at her own pace. [R41]. These facts suggest that one reason Plaintiff chose to work as a hairstylist is because, although she did have to work with the public, she did not have a supervisor.

The Commissioner argues that Dr. Besses only found that Plaintiff might have had sporadic and moderate limitations in dealing with supervisors. [Doc. 14 at 13-14]. Elsewhere in his brief, the Commissioner argues that the ALJ did not include such a limitation because it was not supported. [*Id.* at 19]. However, the ALJ did not explicitly state in his decision why a limitation with regard to

coworkers and the public was appropriate, while one with regard to supervisors was not.  [*See generally* R12-25].  In the portion of the decision the Commissioner points to as justifying the limitation, the ALJ explains that a moderate limitation in interacting with others is appropriate because Plaintiff has no friends, avoids her siblings, and prefers to self-isolate, but also lives in a house with her adult children, has a close relationship with her children, and shops in stores.  [R16].  Even under a broad interpretation, however, these facts do not speak to Plaintiff's ability to interact with supervisors.  In such a situation, a Court may not affirm simply because some conceivable rationale may have supported the ALJ's decision. *Winschel*, 631 F.3d at 1179.

For these reasons, the Court concludes that the ALJ's decision included errors of law and was not supported by substantial evidence.  Accordingly, this matter is **REVERSED AND REMANDED** to the Commissioner for further consideration of Plaintiff's claims.

Because the undersigned finds that the ALJ erred to reversal with respect to Plaintiff's first assignment of error, the Court has no reason to address her other assignment of error at any great length.  *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims") (citation

omitted).  However, because the issue has already been touched upon briefly above, the Court disagrees with Plaintiff's argument that a limitation to simple, routine, repetitive tasks does not adequately account for moderate difficulties in concentration, persistence, or pace.  [Doc.  12 at 18-19].

The Eleventh Circuit has observed that when medical evidence demonstrates that a claimant is able to engage in simple, routine tasks or unskilled work notwithstanding moderate limitations in concentration, persistence, and pace, a hypothetical limiting the Plaintiff to only unskilled work adequately accounts for those limitations.  *Carpenter v. Comm'r, Soc. Sec.*, 614 Fed. Appx. 482, 490 (11th Cir. Aug. 17, 2015) (quoting *Winschel*, 631 F.3d at 1180); *see also Jacobs v. Comm'r, Soc. Sec.*, 520 Fed. Appx. 948, 951 (11th Cir. June 6, 2013) (finding that an ALJ's hypothetical fully accounted for claimant's moderate difficulties in maintaining concentration, persistence, or pace by limiting him to one- to three-step non-complex tasks).

Indeed, elsewhere in Plaintiff's brief, she acknowledges that the Eleventh Circuit has held that a restriction to simple or routine tasks can adequately account for moderate limitations in concentration, persistence, or pace when the medical evidence demonstrates an ability to perform those tasks.  [Doc. 12 at 20].  However, Plaintiff argues that that holding does not apply here because Dr. Besses' opinion

found that Plaintiff's ability to concentrate and adhere to a work schedule to perform the necessary tasks was impaired, and she was moderately limited in even work-related functions. [*Id.* at 20-21]. Plaintiff argues that, contrary to the ALJ's findings, the fact that she was able to perform some household tasks does not show that she retained the ability to concentrate, persist, and maintain pace necessary for competitive employment standards. [*Id.* at 21]. Plaintiff further argues that an RFC must weigh the medical opinion evidence in order to conclude that simple work accounts for a moderate deficit in concentrating, persisting, and maintaining pace. [Doc. 16 at 3-4].

In the present case, the ALJ found that Plaintiff had the ability to understand, remember, and carry out simple, routine, repetitive tasks and limited her to unskilled work. [R17, 24]. In reaching his conclusion that Plaintiff had moderate difficulties, the ALJ noted that she could remain focused and attention during her daily routine, could finish tasks, could write checks and pay bill, could do crossword puzzles, and enjoyed doing hair and nails. [R17]. As support, the ALJ cited to Plaintiff's Function Report, [R394-400], Dr. Besses' opinion, [R554-57], medical records from Salveo Integrative Health, [R564-80], office treatment records from Gwinnett Psychiatry, [R834-50], and Plaintiff's hearing testimony, [R34-58].

45

In her Function Report, Plaintiff indicated that she could drive, count change, handle a savings account, use a checkbook, and do crossword puzzles. [R397-98]. The medical records from Salveo Integrative Health indicate that on October 16, 2017, and November 6, 16, and 29, 2017, Plaintiff had an appropriate attention span and was not easily distracted, was pleasant and cooperative, and had a linear thought process, [R568, 570, 572, 575]. The records from Gwinnett Psychiatry on June 27, 2017, indicate that Plaintiff was friendly and attentive, but glum. [R839]. Plaintiff was found to have short- and long-term memory intact, to be fully oriented, to have no signs of attentional difficulties, and to be cooperative and attentive throughout the session. [*Id.*]. Similar findings were made a month later. [R846]. During her hearing testimony, Plaintiff stated that she worked as a hair stylist for different people. [R41].

Dr. Besses found that Plaintiff could concentrate sufficiently to complete a three-stage command, was able to understand, remember, and carry out simple, detailed, and complex instructions but her concentration was moderately impaired for daily tasks and basic work-related functions [R554-55, 557]. Although the ALJ did not weigh Dr. Besses' opinion, he did explicitly mention these findings. [R18-19]. Plaintiff argues that Dr. Besses' findings cannot be relied up on because the ALJ did not weigh her opinion, [Doc. 16 at 3], but the duty to determine an RFC

46

lies with the ALJ, and not doctors, *Robinson v. Astrue*, 365 Fed. Appx. 993, 999 (11th Cir. Feb. 19, 2020).  The Court further notes that, in *Winschel*, the Eleventh Circuit stated that medical evidence, not necessarily medical opinions, were necessary to demonstrate that a claimant could engage in simple, routine tasks despite limitations in concentration, persistence, and pace, and so unskilled work could sufficiently account for such limitations.  631 F.3d at 1180-81.

The Court finds that the medical evidence relied upon by the ALJ in determining that simple work would account for a moderate deficit in concentrating, persisting, and maintaining pace is comparable to previous cases. For example, in *Maruske v. Comm'r, Soc. Sec.*, the Eleventh Circuit affirmed a similar finding based on the claimant's own statements and the findings of a non-examining state consultant.  572 Fed. Appx. 762, 767 (11th Cir. July 17, 2014). The ALJ here relied upon Plaintiff's statements in her Function Report and testimony, medical records, and the findings of a consultant.  The ALJ included these limitations in his hypothetical question to the VE by inquiring as to a person who could perform simple to detailed tasks that were routine and repetitive.  [R53-54].   The Court therefore finds that the RFC's limitation to simple, routine, repetitive tasks sufficiently accounted for Plaintiff's moderate limitations in concentration, persistence, or pace.

47

## IX.   <u>CONCLUSION</u>

In conclusion, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** the case for further proceedings consistent with this opinion.

The Clerk is **DIRECTED** to enter final judgment in favor of Plaintiff.

**IT IS SO ORDERED and DIRECTED**, this 19th day of March, 2021.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE